UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCUS D. MAYS #218101,

        Plaintiff,        Case No. 2:09-cv-182

v.        Honorable R. Allan Edgar

GERALD HOFBAUER, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. **The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.** Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.        Factual allegations

Plaintiff Marcus D. Mays #218101, an inmate at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Gerald Hofbauer, S. Anderson, S. Niemi, Unknown Steve, R.N., S. Magunna, R.N., David Gwinn, R.A., Resident Unit Officer Unknown Butler, Patricia Caruso, Leo Friedman, Mike Cox, Jennifer Granholm, Greg McQuiggin, Linda Tribley, William Jondreau, C. Smith, Jeff Larson, Gloria Hill, David Tyree, five Unknown Marquette Prison Officials, Regional Prison Administrator Jeri-Ann Sherry, Kenneth McEachern, Doctor Unknown Nibbleing, Doctor Unknown Page, Unknown Georgia, R.N., Gary Capello, Zeda Wisc, and Unknown Medical Director / Supervisor.

Plaintiff alleges in his complaint that he arrived at the Marquette Branch Prison (MBP) on September 15, 2005. Plaintiff suffered a seizure on January 6, 2007, in the presence of Corrections Officer Rutter and lost consciousness. Plaintiff was given Dilantin by Defendant Steve, R.N., and by 11:30 a.m., Plaintiff had completely broken out in a red and purple rash, which covered all of his body. Plaintiff showed his rash to Defendant Magunna, and asked to be sent to the Brooks Center in Muskegon, Michigan, for medical attention. Plaintiff indicated that he was feeling horrible and needed treatment. Defendant Magunna refused and merely gave him hydrocortisone cream, despite Plaintiff's repeated pleas to see a doctor. By the next day, Plaintiff's head had swollen to the size of a large pumpkin and he went to medical, where he was seen by Defendant Gwinn. Plaintiff asked to be sent to the Brooks Center, but Defendant Gwinn refused. Defendant Gwinn gave Plaintiff a shot of prednisone and sent him back to his cell. On January 8, 2007, Plaintiff suffered from pain, difficulty breathing, and a high fever, and was too sick to leave his cell even to eat. By

January 14, 2009, Plaintiff's condition had worsened, he was receiving breathing treatments which did not relieve his symptoms and was sent to the Brooks Center for medical care. Plaintiff was returned to the MBP the same night, and on January 15, 2007, he was sent to the hospital in Marquette because he was still having breathing problems and was urinating blood.

Plaintiff claims that on January 16, 2007, Dr. Lawson asked Plaintiff why the prison staff had waited so long to bring him to the hospital, stating that Plaintiff had suffered a life threatening allergic reaction to Dilantin, and now had Stevens-Johnson Syndrome. Plaintiff was sent back to MBP with a urinary tract infection, sent to segregation, and was given big white pills, throat lozenges, and Ensure to drink. Plaintiff was finally returned to the general population on April 14, 2007, and on April 15, his eyes began to swell up and his skin started flaking and he was sent back to the Brooks Center. Plaintiff was subsequently rushed to Marquette General Hospital, where he was given intravenous fluids. After approximately two weeks, Plaintiff was told by doctors that there was nothing more they could do for him.

On May 7, 2007, Plaintiff was given petroleum jelly, Eucerin cream, and was sent to a specialist, who stated that Plaintiff should not have been given the antibiotic Vancomycin, because he had Dilantin in his system and if mixed with the Vancomycin, it could cause a serious skin condition, and that Plaintiff could suffer permanent damage. Plaintiff states that he has in fact suffered such damage and that his physical appearance is now so offensive that it "shocks the conscience."

Plaintiff attaches a copy of a step I grievance response dated April 15, 2008, in which the investigation information was as follows:

> Mr. Mays arrived in JCF [G. Robert Cotton Correctional Facility] 4-12-07 and was admitted to [the hospital] the same date for Staphylococcus bacteremia, hypersensitivity to Dilantin, and seizure disorder. Specifically, for complaints of allergic rash, he was seen in Sick Cell 5-09, 5-11, 6-13, 6-28, 7-25, 8-22, and 8-23-07, by an MP 5-01, 5-07, and 9-28-07; admitted to [the hospital] 5-10 and 6-05-07; kited 6-27 and 8-08-07; had several appointments with a dermatologist, and had the medications for this rash renewed multiple times. His rash was discussed with him in all appointments he attended, and he had sessions with Psychological Services (PSU) staff 8-30, 9-06, 9-13, and 9-20-07 to address his concerns. These dates do not include the number of appointments, consults, and admissions to [the hospital] relating to his other medical problems, during which he could also have discussed his concerns. The information he states he has been seeking has been discussed with him multiple times.

(*See* Docket 1-2, p. 21 of 42, step I grievance response for JCF 2008 01-0042-12D-3.)

In addition, the step I grievance response to JCF 2007 10-2166-12D-3, states that Plaintiff was diagnosed with erythroderma and Steven Johnson Syndrome as a reaction to the medication Dilantin. Plaintiff was subsequently diagnosed with MRSA (Methicillin resistent Staphylococcus aureus), which was treated with antibiotics. Finally, the response notes that the scarring on Plaintiff's face is permanent and is an unfortunate side effect of the Stevens-Johnson Syndrome. (*See* Docket 1-2, p. 26 of 42.)

Plaintiff offers a informational document from the Mayo Clinic regarding Stevens-Johnson syndrome, which states that it is a rare, serious disorder of the skin and mucous membranes. The cause of Stevens-Johnson syndrome is usually an allergic reaction in response to medication, infection or illness, and the symptoms include skin pain, facial swelling, blisters on skin and mucous membranes, hives, tongue swelling, a red or purple skin rash that spreads, and shedding of skin. (*See* Docket 1-2, p. 17 of 42.) Of the possible complications, Plaintiff indicates that he suffered from

damage to his internal organs and permanent skin damage. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to be asserting a violation of his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). It is clear

from Plaintiff's complaint, as well as the attachments to his complaint, that he received medical care on numerous occasions and that his complaint is with regard to the adequacy of the care he received. As noted above, Plaintiff suffers from Stevens-Johnson syndrome, which is a rare condition, that was caused by an allergic reaction to Dilantin. The fact that Plaintiff was not correctly diagnosed when he initially developed symptoms does not rise to the level of an Eighth Amendment violation. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     1/6/2010                             */s/ R. Allan Edgar*
                                                R. Allan Edgar
                                                United States District Judge